IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMANDO PAGAN, et al. | : | CIVIL ACTION |
| *A Minor, by his parents and natural* | : | |
| *Guardians, Miguel Camacho and* | : | No. 11-5178 |
| *Natasha Ortega* | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                   **May 31, 2012**

On March 12, 2009, Plaintiff Armando Pagan, a student at Olney High School in Philadelphia, was assaulted and battered by another student in a stairwell of the school while re-entering the building following a fire drill. Pagan and his parents, Miguel Camacho and Natasha Ortega, thereafter filed this action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against the City of Philadelphia, the School District of Philadelphia, School District Superintendent Arlene C. Ackerman, Olney High School Principal Newton Brown, III, Philadelphia Police Commissioner Charles H. Ramsey, and "John Doe," the student who assaulted Pagan, seeking to hold these Defendants liable for the injuries Pagan sustained as a result of the assault. Plaintiffs bring a § 1983 claim alleging a violation of Pagan's substantive due process right to personal bodily integrity against all Defendants. Plaintiffs also bring state law claims for assault and battery and harassment against Doe, and for intentional and negligent infliction of emotional distress against all Defendants.[1] The School District, Ackerman, and Brown (collectively, the "School District Defendants") have

---

[1] The Complaint also includes claims against all Defendants for violations of Pagan's rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and the Pennsylvania Fair Educational Opportunities Act (PFEOA), 24 Pa. Stat. Ann. § 5001 et seq. At the oral argument on the Defendants' motions to dismiss the Complaint, however, Plaintiffs' counsel represented Plaintiffs were no longer pursuing their IDEA and PFEOA claims. Therefore, those claims will be dismissed as withdrawn and are not addressed herein.

filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as have the City and Commissioner Ramsey (collectively, the "City Defendants").  For the reasons set forth below, the motions will be granted as to Plaintiffs' § 1983 substantive due process claim, which will be dismissed without prejudice.  This Court reserves ruling on Plaintiffs' remaining state law claims pending consideration of any amended complaint filed by Plaintiffs.

**FACTS**[2]

Pagan is a special needs student with Attention Deficit Hyperactivity Disorder (ADHD) and other learning disabilities who attends special education classes at Olney High School (Olney).  At the time of the incident at issue, Pagan was 15 years old.

On March 12, 2009, there was a fire drill at Olney.[3]  According to the Complaint, at the time of the fire drill, the School District and City Defendants had a policy, practice, or custom of providing insufficient numbers of security and other personnel in the school's hallways and stairwells, and of failing to provide structure, guidance, direction, or supervision to students re-entering the school following a fire drill.  Compl. ¶¶ 19-20.  Pursuant to these policies, practices, or customs, after the fire drill on March 12, students were required to re-enter the school without any adult protection or supervision.  During the re-entry process, while Pagan was in a stairwell in the school surrounded by other students, Doe assaulted and battered him, causing him to sustain serious and permanent injuries, including facial contusions, a fractured jaw, neurological damage, migraine

---

[2] The following facts are drawn from the allegations of the Complaint, which this Court must accept as true in evaluating the instant motions to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[3] Although the Complaint alleges the City, the School District, Ackerman, Brown, and Ramsey "conducted" the fire drill, Compl. ¶ 23, at oral argument, Plaintiffs' counsel represented only Brown and possibly Ackerman would have been responsible for how the fire drill was carried out.

headaches, Temporomandibular Joint Disorder, Post-Traumatic Stress Disorder, and other psychological injuries.

Prior to the March 12 incident, other students—including Pagan—had been assaulted in the stairwells at Olney. According to the Complaint, the School District and City Defendants either knew or should have known that Pagan had previously been seriously injured by another student in a stairwell at Olney, and also should have known the school's safety measures were inadequate. The School District and City Defendants also knew or should have known Doe had aggressive and violent tendencies and posed a substantial risk of serious bodily and emotional harm to younger and disabled students like Pagan.

After the assault, Pagan, who was bleeding profusely, was unable to find a school employee to help him and thus had to walk by himself through the school's dangerous hallways to the office. Pagan then waited in the office for 15 to 30 minutes without medical care before proceeding unescorted to the nurse's office. Once in the nurse's office, Pagan was again forced to wait without medical care for an hour and a half until his parents arrived, while the school nurse reprimanded him for failing to catch all of the blood he was coughing up in a waste receptacle. Although Pagan told school and police personnel he would be able to identify his attacker(s), Defendants failed to conduct a proper investigation of the attack.

Based on the foregoing allegations, Plaintiffs assert Defendants violated Pagan's due process rights by placing him in a dangerous and unsupervised setting which they knew or should have known would create a substantial risk of serious bodily injury and emotional harm to him, and by failing to protect him from such serious bodily injury and emotional harm while he was in the School District and City Defendants' custody. Plaintiffs also assert a claim for assault and battery and

harassment against Doe, and assert claims for intentional and negligent infliction of emotional distress against all Defendants.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a Rule 12(b)(6) motion, a district court first should separate the legal and factual elements of the plaintiff's claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11.  The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Plaintiffs' § 1983 claim alleges a violation of Pagan's rights under the Due Process Clause of the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."[4]  U.S. Const. amend. XIV, § 1.  Specifically, Plaintiffs allege Defendants' acts and omissions deprived Pagan of his liberty interest in his personal bodily integrity.  The Due Process Clause "is phrased as a limitation on the State's power to act, not as a

---

[4] The Complaint also invokes the Fifth Amendment; however, because the Defendants are sued in their capacity as state actors, the Fourteenth Amendment is the applicable constitutional provision. *See B & G Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (treating due process claim against federal defendants as a claim under the Fifth Amendment's Due Process Clause, "as the Fourteenth Amendment applies only to acts under color of state law whereas the Fifth Amendment applies to actions of the federal government").

guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Thus, as Plaintiffs themselves acknowledge, the Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196; *see also* Pls.' Resp. 5-6 (recognizing "the general rule 'that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals'" (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997))).

This general rule that the Due Process Clause imposes no affirmative duty on states to protect citizens from the acts of private individuals is subject to two exceptions. First, under the "special relationship" exception, when a state "takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. Second, under the "state-created danger" exception, the state "has a constitutional duty to protect a person against injuries inflicted by a third-party when it affirmatively places the person in a position of danger the person would not otherwise have faced." *Walter v. Pike Cnty.*, 544 F.3d 182, 192 (3d Cir. 2008) (citation omitted); *see also Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (holding a due process violation may occur "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention'" (quoting *Scheiber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003))).

Insofar as Plaintiffs' due process claim is premised on the theory that Defendants (or some of them) had a duty to protect Pagan from harm because, as a public school student, Pagan had a

special relationship with the state, this theory is foreclosed by Third Circuit precedent. In *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1369-72 (3d Cir. 1992) (en banc), the Third Circuit rejected the argument that a special relationship exists between public schoolchildren and the state based on Pennsylvania's statutory scheme of compulsory school attendance and laws permitting school officials to exercise *in loco parentis* authority over students while at school. In so holding, the court contrasted a schoolchild's situation with the situation of prisoners, involuntarily committed patients, and foster children, all groups with which the state has been held to have a special relationship giving rise to a duty to protect. The court concluded that, unlike persons in these latter three groups, a schoolchild does not have the kind of comprehensive custodial relationship with the state necessary to trigger the state's affirmative duty to protect, noting, for schoolchildren, it is the parents who decide where the child's education will take place, the restrictions on the child's freedom during the school day do not prevent the child from meeting his basic needs, and the child does not depend on the school for his basic needs. *See id.* The Third Circuit has continued to adhere to its holding in *D.R.* in more recently decided cases. *See Brown v. Sch. Dist. of Phila.*, 456 F. App'x 88, 90 n.5 (3d Cir. 2011) (noting the existence of the special relationship exception, but stating "a student in school does not have that relationship with the state"); *Sanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006) (holding no special relationship existed between a schoolchild and the state, citing *D.R.*).

In their opposition to the motions to dismiss, Plaintiffs cite *Pagano v. Massapequa Public Schools*, 714 F. Supp. 641, 643 (E.D.N.Y. 1989), in which the district court held a special relationship existed between an elementary school student and his school such that the student was "owed *some* duty of care by [the school] which may or may not rise to the level required [for

6

prisoners and institutionalized patients]." As Plaintiffs' counsel acknowledged at oral argument, however, *D.R.* is the law in the Third Circuit, and this Court is not at liberty to disregard it. Because *D.R.* forecloses Plaintiffs' claim under the special relationship theory, Plaintiffs' substantive due process claim based on this theory will be dismissed.[5]

Plaintiffs also argue they have adequately pleaded a violation of Pagan's substantive due process rights under the state-created danger theory. A claim under this theory, as adopted by the Third Circuit, has the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright*, 443 F.3d at 281 (internal quotation marks and citations omitted). To establish the fourth element of a state-created danger claim, a plaintiff must show: (i) "a state actor exercised his or her authority," (ii) "the state actor took an affirmative action," and (iii) "this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all." *Ye v. United States*, 484 F.3d 634, 639 (3d Cir. 2007); *see also Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006) (holding "[t]here must be a direct causal relationship between the affirmative act

---

[5] At oral argument, Plaintiffs' counsel acknowledged *D.R.* is the law in the Third Circuit, but stated Plaintiffs were continuing to press their claim under the special relationship theory so as to preserve the issue for appeal.

of the state and plaintiff's harm" to satisfy the fourth element of a state-created danger claim).

The School District Defendants argue Plaintiffs' state-created danger claim should be dismissed because the Complaint does not allege an affirmative act by a state actor "that caused the injuries to [Pagan] at the hands of an unidentified third party." Sch. Dist. Defs.' Mem. 7. Rather, they contend the gist of Plaintiffs' claim is that Defendants failed to protect Pagan from acts of violence by other students, which failure to act cannot form the basis for a state-created danger claim. The City Defendants advance a similar argument. *See* City Defs.' Mem. 10 (arguing the City did nothing to create the condition in which Pagan was assaulted by another student).

In their opposition to the motions to dismiss and at oral argument, Plaintiffs identified two affirmative acts which they contend caused the harm Pagan suffered. First, focusing on the fact that Olney had been identified as a "persistently dangerous school"[6] at the time of the events in question, Plaintiffs argue placing Pagan (or any student) in such a school on a compulsory basis constitutes an affirmative exercise of state authority that increases the risk of danger to the student. Second,

---

[6] Under standards adopted by the Pennsylvania Department of Education pursuant to the No Child Left Behind Act of 2001, Pub. L. No. 107-110, 115 Stat. 1425 (2001), a "persistently dangerous school" is a public elementary, secondary, or charter school that, in the most recent school year and in one of the two years prior to the most recent school year, has had 20 or more "dangerous incidents" for a school with more than 1,000 students, or has had a number of "dangerous incidents" representing at least 2% of the school's enrollment for a school with between 251 and 1,000 students. 22 Pa. Code § 403.2 (2009). "Dangerous incidents" include "weapons possession incident[s] resulting in arrest (guns, knives or other weapons) or . . . violent incident[s] resulting in arrest (homicide, kidnapping, robbery, sexual offenses and assault) as reported on the Violence and Weapons Possession Report." *Id.* Although the Complaint does not refer to Olney as a persistently dangerous school, in support of their opposition to the motions to dismiss, Defendants submitted lists of the Pennsylvania schools so designated by the Department of Education for the 2006-07, 2007-08, 2008-09, 2009-10, and 2010-11 school years. Pls.' Supplemental Resp. Ex. A. While Olney, which at some point was divided into Olney High School East and Olney High School West, was not designated a persistently dangerous school in 2006-07 or 2007-08, Olney High School West was on the list in 2008-09, and both Olney High School East and Olney High School West were listed as persistently dangerous in 2009-10 and 2010-11.

Plaintiffs argue the fire drill itself, in which school officials ordered students out of the building, then ordered them to re-enter the building without providing any guidance, security, or supervision, notwithstanding the officials' knowledge of the dangers within the building, "created a specific situation of danger in an already volatile environment." Pls.' Resp. 8-9. Neither argument is persuasive.

As to Plaintiffs' first argument, the Third Circuit has rejected the notion that compulsory school attendance laws give rise to a general duty to protect students from acts of violence by other students, in part because of the role parents play in deciding where a child's education takes place. *D.R.*, 972 F.2d at 1371 (noting, for schoolchildren, "it is the parents who decide whether that education will take place in the home, in public or private schools or . . . in a vocational-technical school," even though "[f]or some, the options may be limited for financial reasons"); *see also Brown*, 456 F. App'x at 91 (suggesting school official's promise to provide student with one-on-one supervision was not an affirmative act that restricted student's or her family's freedom to act because "even though [student] was required to attend school, her family could have fulfilled that requirement in a different setting" (citing *D.R.*)).[7]

The Third Circuit also has repeatedly recognized that knowledge of a risk of harm to a particular individual or group of individuals does not give rise to an affirmative duty to protect. *See, e.g., Bennett v. City of Phila.*, 499 F.3d 281, 288 (3d Cir. 2007) (explaining "*DeShaney* clearly holds

---

[7] Indeed, Pennsylvania's regulations pursuant to the No Child Left Behind Act require the applicable local educational agency (LEA) to offer students attending a persistently dangerous school "the opportunity to transfer to a safe public school, including a charter school, within the LEA." 22 Pa. Code § 403.6(d)(2)(iii) (2009); *see also* 20 U.S.C. § 7912(a) (requiring states receiving federal education funds to "establish and implement a statewide policy requiring that a student attending a persistently dangerous public elementary school or secondary school . . . be allowed to attend a safe public elementary school or secondary school within the local educational agency").

9

that no affirmative duty to protect arises from the State's knowledge of the individual's predicament" (internal quotation marks and citation omitted)); *Bright*, 443 F.3d at 284 (holding even if county probation officer knew of a danger to victim, probation officer's failure to act on such knowledge did not violate the Due Process Clause). Moreover, the Third Circuit has rejected state-created danger claims in cases involving student-on-student school violence, even when school officials were alleged to have known of dangerous conditions within the school or in a particular classroom.

In *Mohammed v. School District of Philadelphia*, 196 F. App'x 79 (3d Cir. 2006), for example, a student at Olney High School, the same school Pagan attended, was assaulted in a stairwell of the school while walking to class in the morning. As in this case, the student brought a state-created danger claim against the School District of Philadelphia and several school officials, arguing the school had created the opportunity for the attack by failing to install a surveillance camera in the stairwell and by failing to have a full complement of security officers at the school on the date of the attack. At the time of the attack, Olney was experiencing increasing numbers of violent incidents. Indeed, the principal himself acknowledged the school was experiencing "a tremendous amount of fights [and] serious incidents" and "the building basically was out of control." *Id.* at 80. Notwithstanding school officials' knowledge of the increased problem of violence in the school, the district court granted summary judgment in favor of the school defendants on the student's state-created danger claim, and a panel of the Third Circuit affirmed. The Third Circuit recognized the atmosphere of violence permeating the school made it foreseeable that any student could be attacked "at any time and in any location by another student," but nevertheless held there was "nothing about the state's conduct that placed [the student] in a position of increased danger." *Id.* at 81-82.

Similarly, in *Brown v. School District of Philadelphia*, 456 F. App'x 88 (3d Cir. 2011), another Third Circuit panel affirmed the grant of summary judgment in favor of the school defendants on a state-created danger claim by a high school student with mild mental retardation who had been sexually assaulted by five fellow students in a persistently dangerous school.[8] Although school officials allegedly knew of a prior incident in which a different student had made sexual advances toward the plaintiff, and knew students regularly gained access to the auditorium in which the assault took place even though it was supposed to be kept locked, the Third Circuit found the plaintiff's claim insufficient, holding the school's promise of and subsequent failure to provide her with one-on-one supervision was not an affirmative act. *Brown*, 456 F. App'x at 91-92.

In both cases, the Third Circuit affirmed the dismissal of the student-plaintiff's state-created danger claim, holding the plaintiff failed to show school officials affirmatively acted to create a danger, notwithstanding their knowledge of dangerous conditions within the school. These cases thus refute the suggestion that simply placing a student in a school officials know to be dangerous constitutes the affirmative act necessary to support such claims. *See also D.R.*, 972 F.2d at 1366, 1373-76 (dismissing state-created danger claim by female high school students who had been molested by a group of male students in a bathroom and a darkroom within their graphic arts classroom, notwithstanding that the student-teacher assigned to the classroom and other school officials allegedly knew severe (albeit non-sexual) misconduct was occurring in the classroom, and at least one school official knew about some sexual misconduct in the classroom).

Plaintiffs also argue the fire drill itself is an affirmative act that increased the risk of harm

---

[8] In its summary judgment decision, the district court noted the plaintiff's high school had been identified as a persistently dangerous school under the No Child Left Behind Act. *Brown v. Sch. Dist. of Phila.*, No. 08-2787, 2010 WL 2991741, at *2 (E.D. Pa. July 28, 2010).

11

to Pagan because school officials required him to go into an unsupervised area of the school building, i.e., the stairwell. This Court disagrees. Although school officials may have acted affirmatively by requiring students to exit and re-enter the school as part of the fire drill, the Complaint as a whole makes clear that it is Defendants' failures to act that allegedly created the dangerous situation for Pagan. The Complaint alleges Defendants had a policy of failing to provide sufficient numbers of security and other personnel in the school's hallways and stairwells, and of failing to supervise students during fire drills. Compl. ¶¶ 19-20. The Complaint further alleges that, pursuant to these policies, Defendants "failed to provide any proper or sufficient protection and/or adult supervision of any kind to the students including, but not limited to, [Pagan] in the school and/or stairwells as the students re-entered the building after the fire drill" on March 12, 2009. *Id.* ¶ 27. These allegations, which fault Defendants for leaving Pagan and other students "unsupervised and unprotected," *id.* ¶ 26, reveal it is not Defendants' affirmative conduct in holding a fire drill—as they were required to do under state law[9]—but their failure to provide adequate security in the stairwell that is alleged to have increased the risk of harm to Pagan. *See Brown*, 456 F. App'x at 91-92 (holding student's argument that school affirmatively promised and then failed to provide her with one-on-one supervision in essence alleged a failure to act); *Kaucher*, 455 F.3d at 433-35 (holding corrections officer's state-created danger claim, although framed in terms of actions affirmatively creating dangerous conditions and misrepresenting dangers, actually challenged defendants' failure to act to improve conditions at jail and to educate and warn inmates and corrections officers about health risk); *Bright*, 443 F.3d at 284-85 (holding allegations that parole

---

[9] *See* 24 Pa. Stat. Ann. § 15-1517(a) (2009) (requiring public schools in Pennsylvania to conduct periodic fire drills).

officer emboldened parolee by confronting him upon witnessing a parole violation and then delaying in arresting him did not satisfy affirmative act requirement, where complaint as a whole suggested it was the failure to promptly arrest the parolee, rather than the act of confronting him, that increased the danger to the victim).

Moreover, the Complaint does not support the plausible inference that the fire drill "create[d] an opportunity that otherwise would not have existed for [harm] to occur." *Sanford*, 456 F.3d at 305 (citation omitted). To be sure, the fire drill created an occasion for students, teachers, and other school personnel alike to exit and re-enter the school building en masse via the hallways and stairwells where Defendants allegedly knew the security was inadequate. Presumably, however, students also had occasion to be in these unsupervised areas of the school at other times during the school day, such as upon arrival at school, between classes, or at the end of the day.[10] Indeed, the Complaint alleges Pagan had previously been injured by another student in the stairwell. Compl. ¶ 16. Although the fire drill may have precipitated Pagan's presence in the stairwell at the time of the attack, it cannot be said to have created an opportunity for harm that would not have existed at other times during the school day. *Cf. Mohammed*, 196 F. App'x at 82 (holding school's failure to have a full complement of security officers did not create an opportunity that would not otherwise have existed for attack by another student to occur).[11]

---

[10] The Complaint does not allege security was only a problem in stairwells during fire drills. To the contrary, the Complaint alleges Defendants had a general policy of failing to provide sufficient numbers of "police, security personnel, teachers, teaching assistants, teacher's aides, police officers and/or other personnel in the stairwells and halls of Olney High School." Compl. ¶ 19.

[11] At oral argument, Plaintiffs analogized the fire drill to a situation in which police arrest a drunk driver and leave the passenger behind in a high-crime area, as was the fact pattern in *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), a case cited (and distinguished) in several Third Circuit opinions. In *Wood*, the Ninth Circuit held a plaintiff had raised a triable issue of fact as to whether

While Plaintiffs' allegations regarding the failure to provide adequate security for students at Olney are serious, and while the designation of any school as "persistently dangerous" is extremely troubling, only the affirmative exercise of state authority is actionable as a state-created danger. Because the Complaint does not sufficiently allege that school officials acted affirmatively to create a danger to Pagan or to render him more vulnerable to danger than had the officials not acted, Plaintiffs have failed to state a claim for a violation of Pagan's substantive due process rights under the state-created danger theory.

In addition to seeking to hold Brown and possibly Ackerman liable for their role in carrying

---

the defendant police officer "affirmatively placed [her] in a position of danger," where the officer had stopped a car in which the plaintiff was a passenger at 2:30 a.m. in a high-crime area, arrested the driver (who was intoxicated), impounded the car, and left the plaintiff stranded by the side of the road five miles from home. *Id.* at 588-90 (citation omitted). The plaintiff thereafter accepted a ride home from a stranger, who raped her. The Third Circuit reached a similar conclusion in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), another case involving a nighttime stop by the police. In *Kneipp*, the police stopped a visibly intoxicated woman and her husband walking home after a night of drinking for causing a public disturbance on the highway. After detaining the couple briefly, an officer permitted the husband to return home to relieve the couple's babysitter. Given the extent of the wife's intoxication (she could not stand or walk on her own), the husband left the scene believing the officers were going to take his wife either to the hospital or to the police station. Instead, they sent her home alone. While en route, the wife fell down an embankment and suffered serious injuries, including permanent brain damage. In concluding the plaintiffs had established a viable constitutional claim under the state-created danger theory, the Third Circuit found sufficient evidence in the summary judgment record to show the officers, "in allowing [the husband] to go home alone and in detaining [the wife], and then sending her home unescorted in a seriously intoxicated state in cold weather," had used their authority "to create a dangerous situation or to make [the wife] more vulnerable to danger [than] had they not intervened." *Id.* at 1209. In both *Wood* and *Kneipp*, the police officer defendants affirmatively placed the plaintiffs in a position of danger by intervening to cut off a private source of protection that was otherwise available to them and then abandoning them. Here, in contrast, the Complaint includes no similar allegations. Although Plaintiffs argue the fire drill required Pagan to leave his special education classroom and go into an unsupervised area of the school, the Complaint does not allege school officials acted to separate Pagan from his teachers and classmates during the fire drill or affirmatively prevented anyone from helping him. *See Brown*, 456 F. App'x at 92 (distinguishing *Kneipp* on the ground the school district "did not . . . keep anyone else from helping [student]").

14

out the fire drill at issue, Plaintiffs also seek to hold the School District and City Defendants liable for establishing and maintaining policies, practices, or customs which caused constitutional harm to Pagan. *See* Pls.' Resp. 9-10 (arguing all of the School District and City Defendants took part in creating policies and procedures that "resulted in a situation of chaos and a complete failure to provide adequate school police and security at Olney High School"); Pls.' Supplemental Resp. 6-7 (explaining the City and Ramsey worked with the School District to design a plan for student safety). A claim under this theory must nevertheless be predicated on a violation of Pagan's constitutional rights. *See Sanford*, 456 F.3d at 314 (emphasizing "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights"). Thus, even if the lack of supervision and security during the fire drill at issue was in accordance with school policy, Plaintiffs' failure to sufficiently allege the affirmative act element of a constitutional state-created danger claim is fatal to this theory of liability as well.[12] Accordingly, Plaintiffs' substantive due process claim based on

---

[12] Plaintiffs cite *Combs v. School District of Philadelphia*, No. 99-3812, 2000 WL 1611061 (E.D. Pa. Oct. 26, 2000), in which the district court permitted a state-created danger claim against a school district—but not against individual school officials—to proceed to trial. The plaintiff in *Combs* was a student in an "unruly and at times violent" Philadelphia high school who had been attacked by three other students in a hallway in the school during a class change. *Id.* at *1. In denying the school district's motion for summary judgment, the court observed, without analysis, that the plaintiff had produced sufficient evidence to create a genuine factual issue as to prongs one, three, and four of the state-created danger test, and proceeded to address only the second prong, finding the plaintiff's evidence of "significant gaps in the training and execution of the school procedures" to be sufficient to show the school district "may have acted with willful disregard for the severity of th[e] risk [of harm to students]." *Id.* at *3. Because the court addressed the affirmative act element only summarily, it did not identify how school officials had used their authority to create an opportunity that otherwise would not have existed for the assault to occur. Significantly, moreover, the court observed the fourth prong may be satisfied by "either an affirmative act or an omission," *id.* at *5 (citing *Morse*, 132 F.3d at 915), a position the Third Circuit subsequently repudiated in *Bright*, 443 F.3d at 282.

15

the state-created danger theory will also be dismissed.[13]

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment"—even if the plaintiff does not seek leave to amend—"unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Although this Court is skeptical of whether Plaintiffs can allege a viable state-created danger claim,[14] because it is not clear that amendment would be futile, the Court will afford Plaintiffs the opportunity to file an amended complaint within the time permitted in the accompanying order.

For the reasons set forth above, the motions to dismiss will be granted as to Plaintiffs' § 1983 claim, which will be dismissed without prejudice, and as to Plaintiffs' IDEA and PFEOA claims, which will be dismissed as withdrawn. Because it is this Court's intention to dismiss Plaintiffs' state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3)[15] if Plaintiffs elect not to file an amended complaint or if any amended state-created danger claim does not withstand a motion to

---

[13] Because this Court concludes Plaintiffs have not sufficiently alleged an essential element of their claim under the state-created danger theory, the Court need not address the City Defendants' alternative arguments for dismissal of this claim.

[14] This Court has twice heard oral argument on the motions to dismiss, having requested Plaintiffs to address the motions preliminarily at the initial pretrial conference, which was held before Plaintiffs had submitted their opposition. Following the initial conference, at which this Court advised Plaintiffs it believed the motions were strong and pressed Plaintiffs to identify the affirmative acts by Defendants giving rise to a state-created danger claim, Plaintiffs responded to the motions, submitting additional documentary materials regarding Olney's designation as a persistently dangerous school and regarding the City and Ramsey's participation in security planning for the school in support of their claims. This Court thereafter held a further oral argument on the motions, during which Plaintiffs clarified their position regarding the affirmative acts on which their claim is based. Notwithstanding the additional materials and argument, this Court finds Plaintiffs have not sufficiently alleged a state-created danger claim for the reasons set forth herein.

[15] Section 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

dismiss, this Court reserves ruling on the state-law claims pending Plaintiffs' response to the accompanying dismissal order.

An accompanying order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.